IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ZUMAR DUBOSE**<br>**ABDUSH DUBOSE**<br>**KARIEM DUBOSE** | **CRIMINAL ACTION**<br>**NO. 20-453-1-2-3** |

# MEMORANDUM OPINION

Abdush, Kariem, and Zumar Dubose (brothers and Co-Defendants) are accused of engaging in a scheme to defraud the United States Postal Service ("USPS") and the United Parcel Service ("UPS").[1] Following several continuances, trial is now scheduled for the first week of October 2021. Abdush moves to sever his trial from that of his brothers on the basis that holding trial as currently scheduled would violate his Speedy Trial Act rights and his rights under the Sixth Amendment. For the reasons that follow, the Motion will be denied.

## I. BACKGROUND

As alleged in the superseding indictment, between October 2018 and July 2019, Defendants fraudulently submitted hundreds of claims for lost packages which were insured by UPS and USPS. Defendants then deposited these claims checks at Citizens Bank under accounts bearing fictitious names. In total, Defendants are claimed to have stolen over $230,000 through the scheme.

Because Abdush's instant Motion rises and falls on the timing of various events in this proceeding, a review of the procedural history is in place. Abdush and Zumar were charged in

[1] Because all three Defendants in this case are brothers with the same last name, they are referenced by their first names for ease of identification and clarity.

an indictment on December 3rd, 2021, with ten counts of mail fraud (in violation of 18 U.S.C. § 1341), and one count of conspiracy to commit money laundering (in violation of 18 U.S.C. § 1956(h)). Abdush was arrested on February 3rd, 2021. Due to the COVID-19 pandemic, the Judge originally presiding over the case moved trial from May to October 2021.[2] On August 26th, 2021, Abdush and Zumar were charged in a superseding indictment that added Kariem as an additional defendant, as well as five counts of wire fraud (in violation of 18 U.S.C. §§ 1343 and 1349) and aiding and abetting (in violation of 18 U.S.C. §2).[3]

Since the Superseding Indictment Defendants have filed at least three motions to continue trial which are relevant to the analysis.

First, on August 30th, 2021, counsel for Zumar filed an unopposed motion to continue trial. The motion was granted on August 31st, 2021, and trial was listed for February 7th, 2022.

Second, on December 17th, 2021, counsel for Kariem filed a motion to continue trial, stating that counsel for Zumar did not oppose the motion and that counsel had not heard from Abdush's attorney. Abdush did not file an opposition to the motion. On December 23rd, 2021, the Court granted the motion and then rescheduled trial for June 6th, 2022.

Finally, on March 1st, 2022, Kariem filed another motion to continue trial. In the motion, he represented that both counsel for Abdush and the Government did not oppose the motion.[4] The following day, the Court granted Kariem's motion, rescheduling trial for all three Defendants on October 3rd, 2022.

On March 3rd, 2022, the day after the order was issued, Abdush's counsel filed the

---

[2] The case was reassigned to this Judge on August 3rd, 2021.

[3] The charges all related to the same criminal scheme even though each Defendant was not charged in every count.

[4] The motion explained that counsel had not contacted Zumar, who was proceeding *pro se*. Zumar never opposed the motion, however.

instant Motion to Sever his trial from his Co-Defendants under Federal Rule of Criminal Procedure 14. The sole basis for Abdush's Motion is that trying him with his brothers in October, instead of in June, would violate his speedy trial rights, under both the Speedy Trial Act of 1974 and the Sixth Amendment of the United States Constitution.

## II. STANDARD OF REVIEW

Where defendants are joined in a criminal indictment, a court may sever a defendant's case from his co-defendant's under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); Fed. R. Crim. P. 14. Importantly, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537. The Third Circuit has often described this principle as "fundamental." *See, e.g., United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). The preference is based on the desire to "promote [judicial] efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro,* 506 U.S. at 537. It follows that "[p]articipants in a single conspiracy should ordinarily be tried together for purposes of judicial efficiency and consistency, even if the evidence against one is more damaging than that against another." *United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986).

Thus, to prevail on a Rule 14 motion, a defendant must "pinpoint clear and substantial prejudice resulting in an unfair trial" that outweighs the preference for joint trials. *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (quoting *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)); *United States v. Wilson*, 216 F. Supp. 3d 566, 585 (E.D. Pa. 2016), *aff'd*, 960 F.3d 136 (3d Cir. 2020) ("Any prejudice must be balanced against the public's interest in judicial

economy, particularly in conspiracy cases where the evidence is likely to overlap.") "[M]ere allegations of prejudice are not enough." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). Indeed, a defendant, properly joined with other defendants in a criminal indictment, has a "heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994).

## III. DISCUSSION

### A. Speedy Trial Act

The first "specific trial right" Abdush asserts would be compromised if he were to be tried with his brothers is his right to a prompt proceeding under the Speedy Trial Act. The Speedy Trial Act mandates that a criminal trial must commence within seventy days of the later of the filing of an indictment or a defendant's initial appearance. 18 U.S.C. § 3161(c)(1). A superseding indictment commences a new 70-day speedy trial period when the superseding indictment adds "a new charge not identified in the criminal complaint or charged in the original indictment." *United States v. Komolafe*, 246 F. App'x 806, 809 (3d Cir. 2007) (citing *United States v. Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992)).

Although the Act requires that trial commence within seventy days, it also provides for a number of situations in which delays can be excluded from this 70-day period. 18 U.S.C. § 3161(h). In cases involving the joinder of multiple defendants, an exclusion that applies to one defendant is applicable to all co-defendants, so long as it is reasonable. *United States v. Felton*, 811 F.2d 190, 199 (3d Cir. 1987).

One period of time that is excludable under the Act is a delay caused by a continuance. In particular:

> Any period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of h[er] findings that

> the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). Such a continuance is appropriate in a number of circumstances, including when time is needed to prepare for trial, to negotiate a plea agreement, or to ensure continuity of counsel. *United States v. Fields*, 39 F.3d 439, 444-45 (3d Cir. 1994). A court may also issue a continuance to avoid "a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

The court must state its reasons for granting the continuance, though that statement can be made sometime after the order is issued. *United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989). A defendant's speedy trial claim can be rejected when the delay was caused by a continuance requested by the defendant, because defendants should not be permitted to "abuse the system by requesting . . . continuances and then argu[ing] that their [rights have been violated] because the continuances they acquiesced in were granted." *Fields*, 39 F.3d at 443 (quoting *Lattany*, 982 F.2d at 883). Because this action was subject to multiple excludable continuances requested by his Co-Defendants, Abdush's right to a speedy trial will not be violated if he is tried in October.

***i. Abdush's Speedy Trial Act period began on August 26th, 2021.***

In this case, Abdush made his initial appearance before a magistrate judge on April 30th, 2021. A superseding indictment as to all three Defendants was issued on August 26, 2021, which added wire fraud charges to the original indictment. Because the superseding indictment was issued after Abdush's appearance, his Speedy Trial Act period began as to him on August 26th, 2021.[5] *Lattany*, 982 F.2d at 872 n.7.

---

[5] In its motion opposing severance, the Government raised numerous events which constitute excludable time that occurred before the issuance of the superseding indictment, such as: continuances issued due to the COVID-19 pandemic; Abdush's time as a fugitive; Defendants' numerous pretrial motions, including Abdush's time litigating an interlocutory appeal; and Zumar's examination for mental competency. Because the clock only began with the

***ii. Zumar's requested continuance that moved the trial to February 7th, 2022 created an excludable period.***

Four days after the superseding indictment was issued, on August 30th, 2021, counsel for Zumar filed an unopposed motion to continue trial, wherein she stated that numerous events causing delays (including Zumar's competency evaluation) warranted additional time to prepare for trial.[6] Abdush did not oppose the motion. The Court granted Zumar's request a day later on August 31st, 2021, and simultaneously set February 7th, 2022 as the new date of trial.

In the order granting the continuance, the Court set forth its reasons for finding that "the ends of justice served by granting th[e] continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial." ECF No. 83 (finding that the continuance was necessary because "defense counsel needs additional time to effectively prepare the . . . matter for trial.") A continuance for this reason has been found to be appropriate by the Third Circuit. *Fields*, 39 F.3d at 444-45. Thus, as to Zumar, the period between August 31st, 2021 (the date of the order granting the continuance), and February 7th, 2022 (the date set for trial), is excluded for Speedy Trial Act purposes. 18 U.S.C. § 3161(h)(7)(A); *see, e.g.*, *United States v. Montefiore*, 1998 WL 156979, at *3 (E.D. Pa. Apr. 3, 1998) (excluding length of time covered by continuances).

---

issuance of the superseding indictment, however, only events beyond that time period are discussed with respect to the Speedy Trial Act analysis.

Although the issuance of a superseding indictment which "contains a new charge not identified in the criminal complaint or charged in the original indictment" does "commence a new, independent 70-day speedy trial period," *Lattany*, 982 F.2d at 872 n.7, the government cannot submit a superseding indictment in bad faith in an attempt to save itself from the fact of an original indictment whose clock has already run. *See, e.g., United States v. Scott*, 2011 WL 1474187, at *3 (E.D. Pa. Apr. 15, 2011) (*citing United States v. King*, 483 F.3d 969, 973 (9th Cir. 2007)). Defendant does not, however, contend that the Government has engaged in dilatory conduct in issuing the superseding indictment, Accordingly, that circumstance is not addressed here. *See United States v. Adams*, 625 F.3d 371, 377 (7th Cir. 2010) (defendant waived argument concerning unreasonable timing of superseding indictment).

[6] The motion also noted that time would be needed to assess Zumar's request to proceed *pro se*. After it was found that Zumar was competent to stand trial, the Court granted Zumar's motion to proceed *pro se* on February 26th, 2022.

***iii. Kariem's first request for continuance which the Court granted and moved the trial to June 6th, 2022 created an excludable period.***

On December 17th, 2021, Kariem filed a motion to continue trial. In the motion, Kariem explained that he needed the additional time because: (1) counsel had scheduling conflicts involving another older criminal trial; (2) the Government informed counsel that additional discovery would be provided, and counsel would "need time to analyze this discovery and discuss [its] contests with his client"; and, (3) the Government indicated that it would be "putting together a global offer for all 3 defendants . . . [which] ha[d] not been conveyed[,] and the defense would require time to discuss the plea offer with [its] clients." These are proper grounds for granting a continuance. *See Fields*, 39 F.3d at 444-45; *Wilson*, 216 F. Supp. 3d at 581 (delay was reasonable because "it was in the best interest of the defendants for their counsel to have sufficient time to either negotiate a plea agreement, or to carefully review the discovery and prepare a defense.")

Abdush did not oppose the motion. On December 23rd, 2021, the Court granted Kariem's motion, finding that "the ends and interests of justice would be served by granting this Motion . . . and that those interests outweigh the interests of the Accused and of the public in a speedy trial." ECF No. 100. Further, the Court found that "failure to grant the requested continuance would likely make a continuation of these proceedings impossible or result in a miscarriage of justice." *Id*. On December 27th, 2021, the Court listed the case for trial to commence on June 6th, 2022. Thus, with respect to Kariem, the period between December 23rd, 2021 (the date of the order granting the continuance), and June 6th, 2022 (the date set for trial), is excluded for Speedy Trial Act purposes. 18 U.S.C. § 3161(h)(7)(A); *see, e.g., Montefiore*, 1998 WL 156979, at *3.

***iv. Kariem's second request for a continuance which resulted in the trial being moved to October 3rd, 2022 created an excludable period.***

On March 1st, 2022, Kariem filed a second motion to continue trial, on the basis that counsel needed additional time to prepare for this case. A day later, the Court granted Kariem's motion, again finding that "the ends and interests of justice would be served by granting this Motion" and that those interests outweighed those of Defendant and the public. Further, the Court found that failure to grant the continuance would result in a miscarriage of justice. Although the court noted that the motion was presented as "unopposed," the decision to grant the Continuance did not rest on that fact; instead, it rested on the reasons articulated in the order itself, which are appropriate reasons to continue trial under the law.[7] *See Fields*, 39 F.3d at 444-45.

The continuance thus went into effect on March 2nd 2022, tolling the time as to Kariem until October 3rd, 2022. 18 U.S.C. § 3161(h)(7)(A). This period is also excludable under the Act. *See, e.g., Montefiore*, 1998 WL 156979, at *3.

***v. As no severance had occurred prior to Kariem's motion, Zumar and Kariem's continuances excluded time as to Abdush.***

Zumar and Kariem's continuances did not only stop the clock as to themselves, but as to Abdush as well. Under Section 3161(h)(6), a "reasonable period of delay" is excluded with respect to a defendant when he is "joined for trial with [] codefendant[s] . . . and no motion for severance has been granted." At the time of granting Kariem's second motion for a continuance, no motion for severance had been filed; Abdush's instant Motion came in only after the fact.

[7] In his severance Motion Abdush filed on March 3rd, Abdush noted that Kariem's counsel "mistakenly stated in the motion [for a continuance] that Abdush consented to the trial continuance." On that same day, Kariem filed an "Amended Motion to Continue Trial," in which he clarified that Abdush's counsel would oppose the Motion. But by then, the Court had already decided Kariem's March 1st motion for a continuance. Further, Abdush never requested to vacate the March 2nd order. The Court thus issued an order on March 31st denying Kariem's amended motion as moot.

And because no severance had occurred prior to granting Kariem's motion, "an exclusion applicable to one defendant applies to all codefendants." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (quoting *United States v. Novak*, 715 F.2d 810, 815 (3d Cir. 1983), *cert. denied*, 465 U.S. 1030 (1984)). As such, the exclusions applicable to Zumar and Kariem also apply to Abdush. *See, e.g., United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (delay resulting from co-defendants' motions served to toll the speedy trial clock for all defendants under Act); *United States v. Erby*, 419 F. App'x 176, 180 (3d Cir. 2011) (defendant's speedy trial clock tolled during period of time co-defendant filed and was granted eight extensions of time because "an exclusion applicable to one defendant applies to all codefendants.")

Due to these continuances—which overlapped—the period from August 31st, 2021 (when Zumar's motion was granted), through the October 3rd, 2022 (the most recent date for trial) is considered excluded time. Thus, between August 26th, 2021 (the date of the superseding indictment) and the current trial date, only 5 non-excludable days have expired for Section 3161(c) purposes.[8] Consequently, Abdush relies on a delay nowhere near that needed to assert a potential violation of his Speedy Trial Act rights.

**B. Sixth Amendment**

The second "specific trial right" Abdush asserts would be compromised if he were to be tried with his brothers is his right to a speedy trial under the Sixth Amendment.

There is no set amount of time at which the Sixth Amendment right to a speedy trial has

---

[8] It is also worth noting that other excludable events occurred in the period between the issuance of the superseding indictment and the date set for trial. Those events include a *pro se* "Notice of Plea" that Abdush filed asserting substantive claims, including a motion to dismiss based on subject matter jurisdiction, and a motion for extension of time to file pretrial motions by Kariem. *See* 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such a motion"); *Arbelaez*, 7 F.3d at 347 ("[a]ny pretrial motion, including a motion for the extension of time, is a pretrial motion within the meaning of [Section 3161h(1)(D)] and creates excludable time, even if it does not in fact delay trial") (citations omitted). These events do not change the analysis above.

been violated; instead, the time period varies with the facts and circumstances of each individual case. *Barker v. Wingo*, 407 U.S. 514, 521-22 (1972). The Supreme Court has laid out four factors for determining if a particular delay has violated the speedy trial right: "the [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. at 530.

***vi. Length of Delay***

The first factor, length of the delay, is calculated from the earlier of the defendant's arrest or indictment. *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014). If the delay is short enough—less than approximately one year—then the court can rely on that factor alone and need not consider the other factors. *Id.* at 174. Once the delay passes this threshold, analysis of the other factors is triggered, with the length of the delay "also separately weighed in the court's analysis of the remaining factors." *Id*.

Abdush's arrest occurred earlier than the superseding indictment, on February 3rd, 2021. Trial is set for exactly one year and eight months later, on October 3rd, 2022. A delay of this length can be permissible depending on the circumstances of the case. *See, e.g., Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009) (four-year delay did not violate speedy trial right because defendant delayed in asserting his right, there were legitimate reasons for delay, and there was no showing of prejudice). However, the time span here warrants review of the remaining factors, and the length counts in a defendants' favor when balancing the factors.

***vii. Reason for the delay***

The second factor, the reason for the delay, looks at the diligence with which the government has pursued the case. *Velazquez*, 749 F.3d at 175. A speedy trial claim will fail if the government has been "reasonab[ly] diligent," whereas relief is "virtually automatic" if the government has acted in bad faith. *Id.* (quoting *Doggett v. United States,* 505 U.S. 647, 657

(1992)). On the other hand, delay attributable to the defendant—including through the actions of defense counsel—may waive the speedy trial claim. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

The length of the delay from the date of Abdush's arrest to the scheduled trial—February 3rd, 2021 to October 3rd, 2022—is one year and eight months. However, the period of delay from August 31st, 2021 (the order granting the first continuance) to the current trial date was caused by Zumar and Kariem's motions to continue trial. Abdush did not object to the first two motions, or move to sever until Kariem made his second motion to continue trial, on March 3rd, 2022. Accordingly, the vast majority of the delay between Abdush's arrest and his trial is attributable to him. *See, e.g., United States v. Rodriguez-Mendez*, 2021 WL 3025898, at *11 (W.D. Pa. July 16, 2021) ("[a]lthough Defendant argues he did not consent to a number of those extensions filed by his co-defendants, he never objected to those requests, nor did he file a motion to sever to bring his case to trial more quickly"); *Wilson*, 216 F. Supp. 3d at 577 (finding that continuances requested by co-defendants were attributable to defendant); *Claxton*, 766 F.3d at 293.

As for the remaining 6 months and 28 days between Abdush's arrest (February 3rd, 2021) and the order granting the first continuance (August 31st, 2021), that delay was not primarily caused by either of the parties, but by the ongoing pandemic.

The prior court first moved Abdush's trial date pursuant to the Eastern District's Standing Order on COVID-19, (dated November 25th, 2020), which provided that trials scheduled to begin before January 15th, 2021 would be continued pending further instruction. The Standing Order, issued by Chief Judge Sanchez, explained that the worsening condition of the outbreak in the district made it "[im]possible to conduct jury trials safely and in accordance with available

public health guidance." The Chief Judge thus found that continuing all trials—not just that of Defendants—"outweigh[ed] the best interest of the public and each defendant in a speedy trial." Accordingly, the court moved Abdush's trial from January 12th, 2021 to May 17th, 2021.

On April 29, 2021, the prior court again moved Abdush's trial date, citing another Standing Order that was issued on March 30th, 2021. That Standing Order similarly found that the ends of justice were served by continuing trials not subject to an initial test period (which this case was not) and scheduled prior to June 7, 2021. Chief Judge Sanchez further found that conducting trials not subject to the test case protocols would result in a miscarriage of justice because such trials "would jeopardize [the] public health and safety and pose significant risks of exposure and transmission of the virus to trial participants." The court thus moved trial from May 17th, 2021 to October 12th, 2021. Such COVID-related continuances have been found to be permissible under the law. *See, e.g.*, *United States v. Roush*, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021), *cert. denied*, 142 S. Ct. 1187 (2022).

Ultimately, nothing in the docket indicates that the Government was not reasonably diligent in its pursuit of trial in this case. If anything, the docket indicates that Defendant had no problem taking up time with numerous motions. In the time following his arrest until the issuance of the Superseding Indictment, Defendant filed: an interlocutory appeal in April 2021, which was only resolved by the Third Circuit in October 2021; a motion for release of custody; and, after that was denied, a motion to lift the detention order, which was also denied.[9]

Because the vast majority of the delay in this case is attributable to Abdush, this factor weighs in the Government's favor.

---

[9] For its part, the Government filed the initial, unopposed motion to continue trial due to the pandemic, and a motion for pretrial detention.

***viii. Assertion of the Right***

The third factor, the defendant's assertion of the right, will weigh in a defendant's favor if he "vigorously pursued a speedy trial." *Hakeem v. Beyer*, 990 F.2d 750, 764 (3d Cir. 1993) (quoting *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992)). It will not if a defendant has taken "other actions indicat[ing] that [he is] unwilling or unready to go to trial." *Id.* Failure to demand a speedy trial does not waive the right, however. *Barker*, 407 U.S. at 528.

This factor is neutral. Abdush has asserted his right, but only recently. *Conroy*, 316 F. App'x at 144 (affirming court's determination that factor weighed against defendant where defendant "delayed in asserting his right to a speedy trial.") Apart from the instant Motion to Sever, Abdush has shown no sign that he is ready and willing to go to trial; the numerous motions he filed suggest the contrary. This factor therefore should not count against Abdush, but it does not count in his favor, either. *See, e.g., Wilson*, 216 F. Supp. 3d at 577 (finding factor neutral where defendant asserted his right, but only after co-defendant further delayed proceedings).

***ix. Prejudice***

The final factor is the prejudice to the defendant. *Barker*, 407 U.S. at 532. Three types of prejudice can result from delaying trial: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern" suffered by the defendant; and, (3) impairment of the defendant's defense. *Id.* The possibility of prejudice is not enough; the defendant must establish that the delay actually caused him prejudice. *See Hakeem*, 990 F.2d at 760. Of the three types of prejudice, impairment of the accused's defense is the most serious, *Barker*, 407 U.S. at 532, because "[c]redit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case." *Hakeem*, 990 F.2d at 762. Prejudice that affects the defendant's ability to defend himself, though, "skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Even if a defendant is unable to meet his burden, prejudice can be presumed if a sufficiently long delay is attributable to the government. *See Doggett*, 505 U.S. at 658. In that case, the burden to rebut is shifted to the government. *Id.* The exact time period needed to presume prejudice has not been settled; the Third Circuit has held that a delay of thirty-five months is sufficient to presume prejudice, but a delay of fourteen months is not. *See United States v. Battis*, 589 F.3d 673, 683 (3d Cir. 2009); *Hakeem*, 990 F.2d at 764.

Here, the closest assertion to prejudice in Abdush's motion is the following statement: "[f]urther delay in proceeding to trial will cause Abdush to be unnecessarily detained without reaching finality in the prosecution against him in accordance with his [s]peedy trial [r]ights."

Abdush presents no assertion of actual prejudice whatsoever. He does not contend that the conditions of his pretrial incarceration are oppressive or substandard. He also fails to show that he suffered any kind of "anxiety and concern" because of the delay. *See Hakeem*, 990 F.2d at 760. Finally, Abdush does not assert that the delay impaired his defense in anyway. And because the delay was not attributable to the Government, prejudice cannot be presumed—the burden of establishing prejudice stays with him.

The balance of all four factors weighs against Abdush. The delay Abdush relies on—a year and several months—may be significant, but it is largely attributed to Abdush, and there is no indication that it will prejudice him. Accordingly, Abdush has not met his burden and there is no potential violation of Abdush's Sixth Amendment rights by trying his case in October.

**C. Severance Analysis**

A court should only sever a defendant's case from his co-defendants' if there is a serious risk that a joint trial would "compromise specific trial rights" implicating "clear and substantial prejudice resulting in an unfair trial." *Lore*, 430 F.3d at 205; *Riley*, 621 F.3d at 335.

Abdush has not shown that his right to a speedy trial under either the Speedy Trial Act or the Sixth Amendment will be compromised by being tried with his brothers. He thus fails to meet his "heavy burden" to defeat the preference for joint trials—especially here, where the evidence concerning each of the Defendants will be the same, and severance would result in duplicative proceedings. Abdush's motion must therefore be denied.

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**