**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL ACTION** |
| **ZUMAR DUBOSE** | **NO.  20-453-1-2-3** |
| **ABDUSH DUBOSE** | |
| **KARIEM DUBOSE** | |

## <u>MEMORANDUM OPINION</u>

*Pro Se* Defendant Zumar Dubose, along with his brothers and co-defendants Abdush and

Kariem, are accused of engaging in a scheme to defraud the United States Postal Service

("USPS") and the United Parcel Service ("UPS").  As a result of that scheme, the Government

charged Zumar[1] and his brothers with ten counts of mail fraud, in violation of 18 U.S.C. § 1341;

five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; bank fraud and aiding and

abetting, in violation of 18 U.S.C. §§ 1344(2) and 2; and, conspiracy to commit money

laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a).  Zumar moves, through multiple

motions, to: (1) challenge the time and manner of his upcoming trial; (2) dismiss the superseding

indictment; and, (3) "void" certain search warrants.  For the reasons that follow, his motions will

be denied.

### I.    BACKGROUND

As alleged in the Superseding Indictment, between October 2018 and July 2019,

Defendants filed over 1,100 fraudulent claims with USPS and over 140 fraudulent claims with

---

[1] Because all three Defendants in this case are brothers with the same last name, they are referenced by their first names for ease of identification and clarity.

UPS.  As part of this scheme, Defendants allegedly shipped packages using fictitious names and insured them with UPS tracking labels or USPS postage.  Defendants then submitted claims for reimbursement, allegedly claiming that these packages were damaged or lost.  As a result, USPS and UPS issued claims checks to the addresses of the fictious claimants, addresses which traced back to the Dubose brothers.  Zumar then deposited the checks into fake business accounts at Citizens Bank.

According to the superseding indictment, USPS, UPS, and Citizens Bank eventually caught onto the scheme and took steps to curtail Defendants' activities.  USPS withheld some of the claim checks, and UPS voided claim checks and refused to pay some of the claims.  Citizens Bank put a hold on an account and prevented withdrawals.  In response, Defendants allegedly filed numerous lawsuits against USPS, UPS, and Citizens Bank, using fictitious plaintiff names and alleging that the companies were not paying them the money to which they were entitled. Defendants also allegedly moved the proceeds of the scheme into another fake business account of their father's.

In due course, Zumar was arrested at a Citizens Bank in Philadelphia while he was allegedly withdrawing large sums of cash from one of the fake business accounts.  Abdush and Kariem were arrested sometime thereafter.  On February 16, 2022, Zumar made a motion to proceed in his case *pro se*, which was accepted.  Since then, he has filed over 15 pro se motions,[2] which overlap in subject matter and span numerous challenges to his prosecution.

The subject matter of Zumar's motions fall into three categories: (1) motions attacking and/or seeking to alter the timing and manner of his upcoming trial; (2) motions seeking

---

[2] In total, the Government estimates that Zumar has filed 26 *pro se* motions, but only 15 of those were filed after February 16, 2022, when his motion to proceed pro se was granted.

dismissal of the superseding indictment; and, (3) motions attacking the legitimacy of the search warrants executed in his case.  Each of these motions, and the standards applicable to them, will be addressed in turn.[3]

## II.  MOTIONS CONCERNING TIME AND MANNER OF TRIAL

### A.  Motion to Sever

Among his many motions, Zumar requests to have his trial severed from that of his brothers.  Where defendants are joined in a criminal indictment, a defendant's case may be severed from that of his co-defendant's under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); Fed. R. Crim. P. 14. Importantly, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537.  The Third Circuit has often described this principle as "fundamental." *See, e.g., United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005).  The preference is based on the desire to "promote [judicial] efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro,* 506 U.S. at 537 (internal quotations and citations omitted)*.*  It follows that "[p]articipants in a single conspiracy should ordinarily be tried together for purposes of judicial efficiency and consistency, even if the evidence against one is more damaging than that against another." *United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986).

Thus, to prevail on a Rule 14 motion, a defendant must "pinpoint clear and substantial

---

[3] Two orders were also issued denying: (1) Zumar's request for return of property under Rule 41(g); and, (2) his challenge to the grand jury procedure.

prejudice resulting in an unfair trial" that outweighs the preference for joint trials. *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (quoting *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)). "Mere allegations of prejudice are not enough." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). Indeed, a defendant, properly joined with other defendants in a criminal indictment, has a "heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994).

Here, Zumar does not provide any basis whatsoever for his severance request, much less point to any "specific trial right" that would be compromised by a continuance. He thus fails to meet his "heavy burden" to defeat the preference for joint trials—especially here, where it appears that much of the evidence concerning the Defendants will be the same for each of them, and severance would likely result in duplicative proceedings. Zumar's motion to sever will therefore be denied.

### B.  Request for a Bench Trial

Denial of Zumar's severance motion affects analysis of his next request, which is one for a bench trial. Throughout his motions, Zumar repeats that he "consents to a bench trial," (*see, e.g.*, ECF 143) at times suggesting that he is entitled to one. He is not. Federal Rule of Criminal Procedure 23 provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a).

At first glance, it would appear that Zumar satisfies the first option of "waiv[ing] a jury trial in writing." But because Zumar's co-defendants have requested a jury trial, and Zumar's motion to sever has been denied, all defendants must be tried together before a jury; otherwise, granting the request would deprive his brothers of *their* right to a jury trial under the Sixth

Amendment.  As to the second option, the Government has indicated that absent any waiver of a jury trial on the part of all three defendants, it does not plan to consent to a bench trial as to Zumar.  Zumar's request for a bench trial is thus denied at this time.

### C.  Right to a Speedy Trial

Throughout his motions, Zumar alleges a violation of his rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment.  Currently, his trial is scheduled for the first week of October.  For the reasons that follow, Zumar's rights to a speedy trial have not been violated.

#### i.    The Speedy Trial Act

The Speedy Trial Act mandates that a criminal trial must commence within seventy days of the later of the filing of an indictment or a defendant's initial appearance.  18 U.S.C. § 3161(c)(1).  A superseding indictment commences a new 70-day speedy trial period when the superseding indictment adds "a new charge not identified in the criminal complaint or charged in the original indictment."  *United States v. Komolafe*, 246 F. App'x 806, 809 (3d Cir. 2007) (citing *United States v. Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992)).

Although the Act requires that trial commence within seventy days, it also provides for a number of situations in which delays can be excluded from this 70-day period.  18 U.S.C. § 3161(h).  In cases involving the joinder of multiple defendants, an exclusion that applies to one defendant is applicable to all co-defendants, so long as it is reasonable.  *See United States v. Felton*, 811 F.2d 190, 198-99 (3d Cir. 1987).

One period of time that is excludable under the Act is a delay caused by a continuance. In particular, a continuance is excludable "if the judge granted such continuance on the basis of h[er] findings that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  A defendant's speedy trial claim can be rejected when the delay was caused by a continuance

requested by the defendant, because defendants should not be permitted to "abuse the system by requesting . . . continuances and then argu[ing] that their [rights have been violated] because the continuances they acquiesced in were granted." *United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994) (quoting *Lattany*, 982 F.2d at 883).

In this case, Zumar's rights under the Speedy Trial Act have not been violated because this action was subject to multiple excludable continuances requested by himself and his brother, Kariem.

a. <u>Orders Granting Continuances</u>

First, Zumar's Speedy Trial Act period began on August 26, 2021, which is the date the superseding indictment was issued.[4] *See Lattany*, 982 F.2d at 872 n.7. Four days after the superseding indictment was issued, on August 30th, 2021, counsel for Zumar filed an unopposed motion to continue trial, which was granted a day later on August 31st, 2021. The order set February 7th, 2022 as the new date of trial. The order further set forth the reasons for finding that "the ends of justice served by granting th[e] continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial."[5] Thus, as to Zumar, the period between August 31st, 2021 (the date of the order granting the continuance), and February 7th, 2022 (the date set for trial), is excluded for Speedy Trial Act purposes. 18 U.S.C. § 3161(h)(7)(A); *see, e.g.*, *United States v. Montefiore*, 1998 WL 156979, at *3 (E.D. Pa. Apr. 3, 1998) (excluding length of time covered by continuances).

Subsequently, on December 17th, 2021, Kariem filed a motion to continue trial. Zumar

---

[4] The superseding indictment added additional bank fraud charges. Zumar made his initial appearance (through counsel) on December 9, 2020, before its issuance.

[5] ECF No. 83 (finding that the continuance was necessary because "defense counsel needs additional time to effectively prepare the . . . matter for trial.") A continuance for this reason has been found to be appropriate by the Third Circuit. *See Fields*, 39 F.3d at 444-45.

did not oppose the motion.  On December 23rd, 2021, Kariem's motion was granted, and it was found that "the ends and interests of justice would be served by granting this Motion . . . and that those interests outweigh the interests of the Accused and of the public in a speedy trial."  ECF No. 100.  On December 27th, 2021, the case was scheduled to commence on June 6th, 2022. Thus, with respect to Kariem, the period between December 23rd, 2021 (the date of the order granting the continuance), and June 6th, 2022 (the date set for trial), is excluded for Speedy Trial Act purposes.  18 U.S.C. § 3161(h)(7)(A); *see, e.g., Montefiore*, 1998 WL 156979, at *3.

Thereafter, on March 1st, 2022, Kariem filed a second motion to continue trial.  The motion explained that counsel had not contacted Zumar, who was proceeding *pro se*.  Zumar never opposed the motion, however.  A day later, Kariem's motion was granted, again on the finding that "the ends and interests of justice would be served by granting this Motion" and that those interests outweighed those of Defendant and the public.  The continuance thus went into effect on March 2nd, 2022, tolling the time as to Kariem until October 3rd, 2022.  18 U.S.C. § 3161(h)(7)(A).  This period is also excludable under the Act.  *See, e.g., Montefiore*, 1998 WL 156979, at *3.

b.  <u>Impact of Continuances on Zumar</u>

Zumar and Kariem's continuances did not only stop the clock as to themselves; they affected each other.  Under Section 3161(h)(6), a "reasonable period of delay" is excluded with respect to a defendant when he is "joined for trial with [] codefendant[s] . . . and no motion for severance has been granted."  At the time of granting Kariem's second motion for a continuance, no motion for severance had been granted.  And because no severance had occurred prior to granting any motion for a continuance, "an exclusion applicable to one defendant applies to all codefendants."  *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (quoting *United States*

*v. Novak*, 715 F.2d 810, 815 (3d Cir. 1983), *cert. denied*, 465 U.S. 1030 (1984)).  As such, the exclusions applicable to Kariem also apply to Zumar.  *See, e.g., United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (delay resulting from co-defendants' motions served to toll the speedy trial clock for all defendants under Act); *United States v. Erby*, 419 F. App'x 176, 180 (3d Cir. 2011) (defendant's speedy trial clock tolled during period of time co-defendant filed and was granted eight extensions of time because "an exclusion applicable to one defendant applies to all codefendants") (citations omitted).

Due to these continuances—which overlapped—the period from August 31st, 2021 (when Zumar's motion was granted), through the October 3rd, 2022 (the most recent date for trial) is considered excluded time.  Thus, between August 26th, 2021 (the date of the superseding indictment) and the current trial date, only 5 non-excludable days have expired for Section 3161(c) purposes.[6]  Consequently, Zumar relies on a delay nowhere near that needed to assert a potential violation of his Speedy Trial Act rights.

### ii.    Sixth Amendment

The Sixth Amendment does not provide for a specific amount of time after which the right to a speedy trial has been violated; instead, the time period varies with the facts and circumstances of each individual case.  *Barker v. Wingo*, 407 U.S. 514, 521-22 (1972).  The Supreme Court has laid out four factors for determining if a particular delay has violated the speedy trial right: "the [l]ength of delay, the reason for the delay, the defendant's assertion of his

---

[6] It is also worth noting that other excludable events occurred in the period between the issuance of the superseding indictment and the date set for trial.  Those events include numerous motions that Zumar filed, and a motion for extension of time to file pretrial motions by Kariem.  *See* 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such a motion"); *Arbelaez*, 7 F.3d at 347 ("[a]ny pretrial motion, including a motion for the extension of time, is a pretrial motion within the meaning of [Section 3161(h)(1)(D)] and creates excludable time, even if it does not in fact delay trial") (citations omitted).  These events do not change the analysis above.

right, and prejudice to the defendant." *Id*. at 530.

    a.  <u>Length of Delay</u>

The first factor, length of the delay, is calculated "from the defendant's arrest or indictment, whichever is earlier." *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014). If the delay is short enough—less than approximately one year—reliance on this factor is appropriate. *Id*. at 174. Once the delay passes this threshold, analysis of the other factors is triggered, with the length of the delay "also separately weighed in [] analysis of the remaining factors." *Id*.

Zumar's arrest occurred earlier than the superseding indictment, on December 4th, 2020.[7] Trial is set for around one year and ten months later, on October 3rd, 2022. A delay of this length can be permissible depending on the circumstances of the case. *See, e.g., Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009) (four-year delay did not violate speedy trial right because defendant delayed in asserting his right, there were legitimate reasons for delay, and there was no showing of prejudice). However, the time span here warrants review of the remaining factors, and the length counts in a defendants' favor when balancing the factors.

    b.  <u>Reason for Delay</u>

The second factor, the reason for the delay, looks at the diligence with which the government has pursued the case. *Velazquez*, 749 F.3d at 175. A speedy trial claim will fail if the government has been "reasonab[ly] diligent." *Id.* (quoting *Doggett v. United States,* 505 U.S. 647, 656 (1992)). Further, delay attributable to the defendant may waive the speedy trial claim. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

---

[7] This is the date the arrest warrant is dated as executed (ECF No. 49). However, the Government states that Zumar was arrested in September 2019. Either date would not change the outcome of this analysis, as the time between Zumar's arrest and his trial exceeds a year and therefore requires analysis of the other factors.

The length of the delay from the date of Zumar's arrest to the scheduled trial—December 4, 2020 to October 3rd, 2022—is around one year and ten months.  However, the period of delay from August 31st, 2021 (the order granting the first continuance) to the current trial date was caused by Zumar and Kariem's motions to continue trial.  Zumar did not object to Kariem's motions to continue.  Accordingly, the vast majority of the delay between Zumar's arrest and his trial is attributable to him.  *See, e.g., United States v. Rodriguez-Mendez*, 2021 WL 3025898, at *11 (W.D. Pa. July 16, 2021) ("[a]lthough Defendant argues he did not consent to a number of those extensions filed by his co-defendants, he never objected to those requests, nor did he file a motion to sever to bring his case to trial more quickly"); *United States v. Wilson*, 216 F. Supp. 3d 566, 577 (E.D. Pa. 2016), *aff'd*, 960 F.3d 136 (3d Cir. 2020) (finding that continuances requested by co-defendants were attributable to defendant); *Claxton*, 766 F.3d at 293.

As for the remaining months between Zumar's arrest (December 4, 2020) and the order granting the first continuance (August 31st, 2021), that delay was not primarily caused by either of the parties, but by the ongoing pandemic.[8]

Ultimately, nothing in the docket indicates that the Government was not reasonably diligent in its pursuit of trial in this case.  If anything, the docket indicates that Zumar had no

---

[8] The court originally presiding over this case first moved Zumar's trial date pursuant to the Eastern District's Standing Order on COVID-19, (dated November 25th, 2020), which provided that trials scheduled to begin before January 15th, 2021 would be continued pending further instruction.  The Standing Order, issued by Chief Judge Sanchez, explained that the worsening condition of the outbreak in the district made it "[im]possible to conduct jury trials safely and in accordance with available public health guidance."  The Chief Judge thus found that continuing all trials—not just that of Defendants—"outweigh[ed] the best interest of the public and each defendant in a speedy trial."  Accordingly, Zumar's trial was moved from January 12th, 2021 to May 17th, 2021.

On April 29, 2021, the prior court again moved the trial date, citing another Standing Order that was issued on March 30th, 2021.  That Standing Order similarly found that the ends of justice were served by continuing trials not subject to an initial test period (which this case was not) and scheduled prior to June 7, 2021.  Chief Judge Sanchez further found that conducting trials not subject to the test case protocols would result in a miscarriage of justice because such trials "would jeopardize [the] public health and safety and pose significant risks of exposure and transmission of the virus to trial participants."  Trial was thus moved from May 17th, 2021 to October 12th, 2021.  Such COVID-related continuances have been found to be permissible under the law.  *See, e.g.*, *United States v. Roush*, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021), *cert. denied*, 142 S. Ct. 1187 (2022).

problem taking up time with numerous motions.  In the time following his arrest until the issuance of the superseding indictment, Defendant filed at least: (1) three *pro se* motions; (2) an interlocutory appeal, which was only resolved by the Third Circuit in January 2022; and, (3) a motion for release of custody.[9]  Because the vast majority of the delay in this case is attributable to Zumar, this factor weighs in the Government's favor.

       c.   <u>Assertion of the Right</u>

The third factor, the defendant's assertion of the right, will weigh in a defendant's favor if he "vigorously pursued a speedy trial."  *Hakeem v. Beyer*, 990 F.2d 750, 764 (3d Cir. 1993) (quoting *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992)).  It will not if a defendant has taken "other actions indicat[ing] that he is unwilling or unready to go to trial."  *Id.*  Failure to demand a speedy trial does not waive the right, however.  *Barker*, 407 U.S. at 528.

This factor is neutral.  Zumar has asserted his right numerous times.  However, Zumar has shown no sign that he is ready and willing to go to trial; the numerous motions and appeals he filed suggest the contrary.  This factor therefore should not count against Zumar, but it does not count in his favor, either.  *See, e.g., Wilson*, 216 F. Supp. 3d at 577 (finding factor neutral where defendant asserted his right, but only after co-defendant further delayed proceedings).

       d.   <u>Prejudice</u>

The final factor is the prejudice to the defendant.  *Barker*, 407 U.S. at 532.  Three types of prejudice can result from delaying trial: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern" suffered by the defendant; and, (3) impairment of the defendant's defense.  *Id.*  The possibility of prejudice is not enough; the defendant must establish that the delay actually caused

---

[9] For its part, the Government filed the initial, unopposed motion to continue trial due to the pandemic, and a motion for pretrial detention.

him prejudice. *See Hakeem*, 990 F.2d at 760. Of the three types of prejudice, impairment of the accused's defense is the most serious, *Barker*, 407 U.S. at 532.

Here, although Zumar asserts that his "right to a defense is violated and impaired thru [sic] the pretrial oppressive incarceration," (ECF No. 138), he has not explained *how* the delay caused him prejudice in preparing his defense, or *how* his incarceration is uniquely oppressive. He also claims that he is suffering from anxiety, but that statement alone is not enough to show a violation of his rights. As the Third Circuit has observed, some level of anxiety is unavoidable in every criminal case. *See Hakeem*, 990 F.2d at 762. Ultimately, Zumar presents no assertion of actual prejudice whatsoever—instead, he simply repeats the words "oppressive conditions," "anxiety and concern," and "impair[ed] defense," which does nothing to bolster his claims for relief. *See, e.g., John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived."); *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (citation omitted) ("[A litigant] must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits."). Further, because the delay was not attributable to the Government, prejudice cannot be presumed—the burden of establishing prejudice stays with him.

The balance of all four factors weighs against Zumar. The delay Zumar relies on—a year and several months—may be significant, but it is largely attributed to Zumar, and there is no indication that it will prejudice him. Accordingly, Zumar has not met his burden and there is no potential violation of his Sixth Amendment rights by trying his case in October.

## III.   MOTIONS SEEKING DISMISSAL OF SUPERSEDING INDICTMENT

Zumar next moves to dismiss the superseding indictment on three grounds: (1) the

indictment fails to state a claim; (2) the Court does not have subject matter jurisdiction; and, (3) the indictment was obtained through "selective and vindictive prosecution."  For the reasons that follow, all of Dubose's arguments fail.[10]

### A.  Failure to State a Claim

Zumar appears to base his motion on Federal Rules of Criminal Procedure 7(c) and 12(b). Rule 7(c) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  And Rule 12(b) provides that "at any time while the case is pending, the court may hear a claim that the indictment . . . fails to . . . state an offense."  *United States v. Huet*, 665 F.3d 588, 593 n.3 (3d Cir. 2012); *see also* Fed. R. Crim. P. 12(b)(3)(B)(v).

The Third Circuit has explained that "an indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *Huet*, 665 F.3d at 595 (quoting *United States v. Vitillo*, 490 F.3d 3145, 321 (3d Cir. 2007) (citation omitted)).  In considering a motion to dismiss, the factual allegations in the indictment must be accepted as true and construed in the light most favorable to the government.  *Id.*.  Thus, a review of facts set forth in the indictment is necessarily "limited to determining whether, assuming all of th[e] facts as true, a jury could find that the defendant committed the offense for which he was charged."  *Id.* at 596.  Review under Fed. R. Crim. P. 12(b)(3)(B) "is a narrow,

---

[10] Zumar also requests dismissal of the indictment based on Rule 48 of the Federal Rules of Criminal Procedure. But that rule only provides grounds through which either the government or the Court may dismiss an indictment, not a defendant.  *See* Fed. R. Crim. P. 48 ("The *government* may, with leave of court, dismiss an indictment, information, or complaint . . . The *court* may dismiss an indictment, information, or complaint") (emphasis added).

limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).

Zumar's first argument is that the superseding indictment fails to state a claim because it fails to apprise him of the nature of the charges against him and prevents him from forming a defense.  However, a review of the superseding indictment—under the deferential standards discussed above—shows that the allegations in the superseding indictment easily satisfy the requirements of Rules 7(c) and 12(b).

All of the counts in the superseding indictment describe in detail the brothers' alleged fraud scheme, including the elements of the offenses.  For example, with respect to the wire fraud charges, the superseding indictment states that Defendants "knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises."  The superseding indictment then describes the manner and means the defendants allegedly used in this scheme.   Specifically, the superseding indictment states that the defendants filed over 1,240 fraudulent claims with the USPS and UPS after shipping insured parcels, then then falsely claimed that they were damaged or lost.  The remainder of the counts in the superseding indictment similarly apprised Zumar of the elements of the charges against him and nature of the scheme the Government alleges he took part in.  The superseding indictment more than meets the "narrow" review required under the rule.  Zumar's first argument therefore fails.

Zumar's second argument is simply that the superseding indictment "alleges conduct that is not criminal activity."  He invokes a variety of federal regulations, state laws, and federal laws like 49 U.S.C. 14706 (the "Carmack Amendment,") and 18 U.S.C. § 288 ("False claims for postal losses") in support of his argument.  The Carmack Amendment gives individuals a private

cause of action against interstate carriers for lost or damaged shipments; Section 288 is a

criminal statute that prohibits false claims for postal losses with a term of imprisonment of one

year.  Zumar's argument seems to be that the activities alleged in the superseding indictment are

not criminal because—in his view—they more appropriately fall under these laws as opposed to

the wire and bank fraud statutes.  But the laws Zumar cites are not the statutes under which the

superseding indictment was brought and are not of consequence to his prosecution.

    Ultimately, the superseding indictment clearly states facts that, if believed to be true,

would allow a reasonable jury to find that Zumar engaged in the crimes alleged.  The fact that

Zumar *believes* the alleged conduct is not criminal—and that he can point to other laws that exist

which have nothing to do with the superseding indictment—does not mean that he can succeed

on a motion to dismiss under Rule 12(b).  *See, e.g., United States v. Int'l Mins. & Chem. Corp.*,

402 U.S. 558, 563 (1971) ("[I]gnorance of the law is no defense.").

### B.  Lack of Subject Matter Jurisdiction

    Zumar's next argument concerning the validity of the superseding indictment is that there

is no subject matter jurisdiction over his case.  Again, he is wrong.  18 U.S.C. § 3231 provides

that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the

courts of the States, of all offenses against the laws of the United States."  "So long as the

indictment charges the defendant with violating a valid federal statute as enacted in the United

States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the

district court's subject matter jurisdiction."  *United States v. Brown*, 752 F.3d 1344, 1354 (11th

Cir. 2014) (emphasis added) (citation omitted); *see, e.g., United States v. Johnson*, 270 F. App'x

191, 192 (3d Cir. 2008) (where an indictment charges a defendant with violating the laws of the

United States, 18 U.S.C. § 3231 "provides the district court with subject matter jurisdiction and

empowers it to enter judgment on the indictment"). The superseding indictment charges Zumar with violating numerous federal statutes. There is thus subject matter jurisdiction over his case.

### C.  Selective Prosecution

Finally, Zumar moves to dismiss the indictment on grounds that it was obtained through "selective and vindictive prosecution." A decision to prosecute is considered selective and violates a defendant's constitutional right to equal protection "when it is made on a discriminatory basis with an improper motive." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). To succeed on a selective prosecution claim, a defendant must demonstrate two factors. First, he must show that persons similarly situated have not been prosecuted. Second, he must show that the government chose to prosecute him "on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right." *Id.. See also United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012). In other words, a defendant must show both a discriminatory "effect" and discriminatory "intent." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). The standard for a selective prosecution claim "is a demanding one," *id.* at 463, and the Supreme Court has stated that decisions to prosecute are "particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Zumar has presented no evidence to establish that the Government pursued charges against him based on an unconstitutional or discriminatory motive, or to punish him for exercising a legal right. Zumar simply argues that the Government prosecuted him to prevent him from exercising his rights under the Carmack Amendment. For reasons explained *supra*, the Carmack Amendment is irrelevant to his prosecution. Given that he only propounds conclusory allegations concerning "discriminatory intent" and "discriminatory effect," Zumar has not

sustained his burden of showing that the Government prosecuted him based on an illegal, discriminatory, or unjustifiable standard or to punish him for exercising a legal right.  He has not shown that he was treated differently from similarly situated defendants—including his own brothers.  Zumar's motions to dismiss the superseding indictment will therefore be denied.

## IV.     MOTIONS CHALLENGING SEARCH WARRANTS

### A.  Request for a Franks Hearing

Zumar also moves for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  In *Franks v. Delaware*, the Supreme Court held that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit for probable cause in support of a warrant after the *ex parte* issuance of the warrant.  438 U.S. 154, 171 (1978).  While there is a "presumption of validity with respect to the affidavit supporting the search warrant[,]" *id*., the defendant may request an evidentiary hearing to rebut that presumption.

To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause."  *Id.* at 155-56; *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).  To meet this threshold, the defendant must present more than conclusory statements that the affidavit contains false statements or omissions.  *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383 n.8.  He must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting his argument.  *Franks*, 438 U.S. at 171.  He must also provide an offer of proof or give a satisfactory explanation for the absence of proof.  *Id*. Sworn affidavits or reliable statements from witnesses are examples of offers of proof sufficient

to satisfy the substantial preliminary showing.  *Id.*; *Yusuf*, 461 F.3d at 383 n.8.[11]

In support of his request for a Franks hearing, Zumar alleges the following: "[t]he false statement that [Agent] Adam M. Greiss made are: 'mail fraud,' 'bank fraud,' 'conspiracy to commit money laundering,' 'fraudulent claims,' 'indicia of fraud,' 'checks obtained by mail fraud' [and] 'deposited fraudulent checks.'"  It appears from this statement that Zumar believes Agent Greiss fabricated information concerning the fraud scheme.  Ultimately, however, Zumar provides no statement of facts or reasons supporting his arguments.  He does not provide any sworn affidavits, statements from witnesses, or any other information that would support his theory that Agent Greiss made false statements.[12]  Zumar thus fails to make the "substantial preliminary showing" that a false statement was made.

Zumar also argues that Agent Greiss improperly "omitted" from the affidavit the "fact" that "USPS and UPS Claims Department never pursued or found any claim to be fraudulent . . . USPS accounting services department never voided a paid claim for fraudulent claims, and UPS never voided a paid claim for fraudulent claims submitted."  Zumar appears to be arguing that if USPS and UPS did not discover a fraud then there is no fraud.  This is nonsense.  By definition, fraud is "[a] knowing misrepresentation or knowing concealment" on the part of a defendant *"of*

---

[11] Only if the challenger provides sufficient proof to obtain a *Franks* hearing, does a court move on to the next step—to actually hold the hearing at which the challenger must prove by a preponderance of evidence that (1) the affiant made false statements or omissions intentionally, knowingly, or with reckless disregard for the truth, and (2) such statements were material to the probable cause determination.  *Yusuf*, 461 F.3d at 383.  If the challenger satisfies this burden, the false statements and omissions will be excised from the affidavit and an assessment is made about whether the corrected affidavit establishes probable cause.  And if the defendant is able to ultimately meet this burden, "the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit."  *United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993) (quoting *Franks*, 438 U.S. at 156).

[12] To the contrary, the affidavit submitted by Agent Greiss explains in detail all of the evidence he reviewed supporting allegations of fraud, including: USPS and UPS claim data; statements from witnesses; and, records showing that claims could be traced back to defendants using mailing addresses, IP addresses, incorporation documents, and bank account information.

a material fact *made to induce another* to act to his or her detriment." *Fraud*, Black's Law Dictionary (11th ed. 2019). The knowledge of a victim is completely irrelevant to whether Zumar committed fraud.

Ultimately, Zumar does not come close to making the required "substantial preliminary showing" that the affidavit contained material, false statements, or a material omission of fact, or that any misstatement or omission was made knowingly, intentionally, or with a reckless disregard for the truth. His motion for a *Franks* hearing will therefore be denied.

### B. Motion to Suppress Evidence

Zumar also seeks to "exclude the fruits of the search found from [the] search warrants, and return the property and money seized, cash and Citizens Bank Account $47,813.09." He claims that warrant at issue in this case is one "that was based on an affidavit so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable."

The Fourth Amendment requires search warrants to be supported by sufficient probable cause. *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011). Review of a magistrate judge's assessment of probable cause is limited to determining whether he had a "substantial basis" for concluding that the affidavit supporting the search warrant established probable cause. *Id*. at 181. The "substantial basis" standard of review is a deferential one, requiring "great deference" to the magistrate judge's initial determination of probable cause. *Id*. at 181-82. In determining whether a magistrate judge had a "substantial basis," only the "facts that were before the magistrate judge, *i.e.*, the affidavit" are considered. *Id*. at 182.

Here, the issuing Magistrate Judge had a substantial basis to authorize the warrant at issue in this case. The affidavit details the evidence gathered in the federal investigation, including the hundreds of claims checks sent to addresses associated with Zumar and internal

UPS data showing that defendants purchased insured packages.  The affidavit then outlines the indicia of fraud identified by federal agents in reviewing USPS and UPS records as part of the investigation, including that: (1) many of the recipient and payee names were not associated with the correct mailing addresses, and that these names were nonsensical, like "poe boy", "xv vn", and "you your"; (2) almost all of these claims stated the exact same loss or damage value; and, (3) almost all of the supporting documentation for the claims were submitted repeatedly.  For example, the affidavit states that over 500 claims for which claim checks were sent to addresses associated with Zumar attached the same five documents as the proof of value.

While Zumar states that the affidavit is "lacking in indicia of probable cause," he does not explain how probable cause is lacking.  Without that, and in light of the substantial detail outlined in the Agent's affidavit, his Fourth Amendment argument under the Fourth Amendment fails.[13]

## V.    ZUMAR'S PLEA

Finally, in his motion at ECF No. 141, Zumar cites to Federal Rule of Criminal Procedure 11, which governs pleas.  Zumar claims that he wishes to withdraw his plea of "not guilty" in this case, that he "did not knowingly plea not guilty," and that he "pled not guilty by force and threat."  It is unclear what he is seeking by making these statements, but if he wishes to plead guilty rather than not guilty, there are means for him to do that and he is entitled to pursue them.

For now, to be crystal clear, all of Zumar's outstanding motions will be denied, including

---

[13] Zumar also alleges a violation of his Fifth Amendment rights, stating in ECF No. 142, "Prosecutorial Misconduct I allege here."  Zumar simply repeats the same conclusory allegations he states in support of his other motions, *i.e.*, that "both indictments were procured by fraud, perjury, and other corrupt means."  Similarly, in ECF No. 146, Zumar alleges that the Government "presented fabricated evidence to obtain search warrants."  His motion on this point says nothing more in substance.  These arguments fail for the same reason all of his claims fail: simply repeating conclusions about wrongdoing are insufficient, without more, to warrant dismissal of an indictment, a search warrant, or otherwise ending a criminal prosecution.  *See Dupree*, 617 F.3d at 728.

those recently filed, as those are mooted by this decision.

An appropriate order follows.

BY THE COURT:

*/s/ Wendy Beetlestone*

_____

**WENDY BEETLESTONE, J.**